UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TECHNOLOGY LENDING PARTNERS, LLC, *et al.* § § § | | |
| Appellants, § § § | | CIVIL ACTION NO. C-07-346 |
| v. § § | | CIVIL ACTION NO. C-07-237 |
| SAN PATRICIO COUNTY COMMUNITY ACTION AGENCY, *et al.* § § § | | |
| Appellees. § | | |

**MEMORANDUM OPINION & ORDER**

The appeals pending before this Court arise out of a settlement order approved by the Bankruptcy Court in *In re San Patricio County Community Action Agency*, No. C-05-20310 (Bankr. S.D. Tex. May 18, 2007), dismissing Appellants' claims and settling all claims against the Debtor's insurance policy. Technology Lending Partners and Nueces Financial Corporation ("Appellants") appeal the following orders issued by the Bankruptcy Court: (1) the Order Consolidating all the Adversary Proceedings;[1] (2) the Order Approving Settlement Agreement;[2] (3) the Order Denying Appellants' Motion for Stay of Order Approving Settlement Agreement;[3] (4) the Order Granting Motion for Approval of Interim Distribution Agreement for Settlement Proceeds;[4] and (5) the Order Denying Motion for Stay of Order Approving Interim Distribution and Denying Stay of Dismissal

---

[1] In a separate action, Appellants filed a Motion for Leave to Appeal the Bankruptcy Court's order consolidating all of the adversary proceedings. *See Michael Schmidt, Trustee v. Rondon, et al.*, Misc. No. 2-07-105 (S.D. Tex. Sept. 11, 2007). The Court will address this motion in a separate order.

[2] *In re San Patricio County Cmty. Action Agency*, No. C-05-20310, dkt. #199.

[3] *Id.* dkt. #228.

[4] *Id.* dkt. #229.

of Consolidated Adversaries.[5] The Trustee, Michael Schmidt, filed motions to dismiss the appeals as moot.[6] After considering the motions, responses, and applicable law, the Court is of the opinion that these appeals should be dismissed as moot.

## Factual and Procedural Background

San Patricio County Community Action Agency ("Debtor") was a non-profit organization, which voluntarily filed Chapter 7 bankruptcy because of the alleged mismanagement of its federal grant money by its officers and directors. The Debtor, pre-petition, purchased a "Non-Profit Organization Liability Policy" ("Policy") issued by St. Paul Fire and Marine Insurance Company ("St. Paul"), which provided up to $1,000,000 of liability coverage for the Debtor and the individual directors, officers, employees, committee members or volunteers of Debtor.

Prior to the Debtor filing Chapter 7 bankruptcy, Appellants filed separate state court actions against Lupita Paiz ("Paiz"), in her capacity as Executive Officer of Debtor.[7] The claims in the state court actions arose out of an equipment lease agreement between Appellants and the Debtor where they claimed that Paiz made negligent representations to them about the Debtor's financial ability to enter into the lease agreement.[8] Paiz then filed an individual Chapter 13 bankruptcy in the

---

[5] *Id.* dkt. #242.

[6] *Tech. Lending Partners, et al. v. San Patricio County Cmty. Action Agency, et al.,* Civil Action No. 2-07-237 ("Case 237"), dkt. #10; *Tech. Lending Partners, et al. v. San Patricio County Cmty. Action Agency, et al.,* Civil Action No. 2-07-346 ("Case 346"), dkt. #6.

[7] *Tech. Lending Partners, LLC vs. Paiz*, No. S-05-5326-cv-B, San Patricio County, Texas, 156th District Court; *Nueces Fin. Corp. vs. Paiz*, No. S-065916-cv-A, San Patricio County, Texas, 36th District Court.

[8] Case 362, Ex. 1. Appellants repeatedly argue it is inequitable to allow settlement proceeds to be distributed to creditors who would not have a claim under the Policy. While many creditors did not file a formal lawsuit, presumably, each unsecured creditors' claim would stem from a failed business transaction caused by the Debtor's inability to pay them. Thus, Debtor's creditors would have the same or similar claims as Appellants. The fact that Appellants

Southern District of Texas, Corpus Christi Division.[9] The bankruptcy court granted an order lifting the stay in Paiz's bankruptcy, allowing the Appellants' state court actions to proceed. Appellants limited the recovery they sought from Paiz to the Policy.

After the Debtor filed its bankruptcy on March 3, 2005,[10] the Trustee intervened in Appellants' state court actions and removed them into the Debtor's bankruptcy on January 31, 2007. The Trustee previously brought adversary actions on behalf of the Debtor against Lupita Paiz and Irving Rondon, as Executive Officers, in Adversary No. 05-02041 on May 9, 2005 and against the Debtor's directors under Adversary No. 05-02069 on September 2, 2005 for their alleged mismanagement. Although the Appellants objected, the Bankruptcy Court issued an order consolidating a total of six adversary actions (including Appellants') under Adversary No. 05-02041 on June 29, 2007, in order to effectuate a settlement for all the claims related to the Policy.

After mediation, the Trustee, on behalf of the estate, reached a settlement with St. Paul. The settlement agreement required St. Paul to pay $650,000 in exchange for a full and final settlement of all claims against the Policy and release from all further obligations under the Policy. The Trustee filed a Rule 9019 motion for approval of the settlement agreement. After a hearing and consideration of the Appellants' objections, the Bankruptcy Court approved the settlement on May 18, 2007. The Bankruptcy Court found that the proceeds of the Policy were property of the bankruptcy estate, and that the settlement was fair and equitable to all the parties involved under the

---

filed a lawsuit against an Officer, instead of the Debtor, does not give their claims priority over those of other creditors that were also affected by Debtor's default. The Policy, which provided liability coverage to Debtor and the officers and directors of Debtor, paid proceeds to each creditor pro rata, undermining Appellants' argument that the settlement was inequitable.

[9] *In re Paiz*, No. C-05-20795 (Bankr. S.D. Tex August 29, 2005).

[10] *In re San Patricio County Cmty. Action Agency*, No. C-05-20310 (Bankr. S.D. Tex. March 3, 2005).

factors set forth in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). Specifically, the Bankruptcy Court had previously denied the motions for summary judgment by and against the Trustee and determined that a trial was necessary to resolve material issues of genuine fact. The uncertainty of success by the Trustee at a lengthy, costly and complex trial militated in favor of settlement. As such, the Bankruptcy Court determined the settlement was fair and in the best interest of the estate and the estate's creditors.

After the Bankruptcy Court approved the settlement, it granted the Trustee's Motion for Approval of Interim Distribution Agreement for Settlement Proceeds. Under the Order, the settlement proceeds were to be distributed as follows: (1) a 50 % contingent fee, or $325,000, plus out-of-pocket expenses of $5,764.97 to the Law Offices of Michael Schmidt in full and final payment of the approved special counsel fees . . .;[11] (2) $159,617.51 to the Attorney General . . . for its 50% share in accordance with the approved Joint Prosecution Agreement; (3) $19,380.62 to the Texas Workforce Commission and $21,275.83 to the Internal Revenue Service, for priority claims; and (4) the remaining amount of $118,961.06 to be paid pro rata to unsecured creditors. The Bankruptcy Court further ordered a release of all claims against St. Paul and the Policy, denied Appellants' motion seeking to stay the distributions under the settlement agreement, and dismissed all the adversary proceedings previously consolidated under Adversary No. 05-02041 (including Appellants' claims) with prejudice.

## Standard of Review

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of

---

[11] Appellants argue the Trustee received a disproportionate share of the settlement and imply that he received improper fees in relation to his work as trustee in this case. The Court finds this argument without merit as each application for compensation, as well as the his employment as special counsel were scrutinized and approved by the Bankruptcy Court.

the bankruptcy court. 28 U.S.C. § 158(a)(1). When reviewing a bankruptcy court's decision, the Court functions as an appellate court, and applies the standards of review generally applied by federal appellate courts. *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992). Findings of fact are subject to the clearly erroneous standard of review. FED. R. BANKR. P. 8013. Questions of law, however, are reviewed de novo. *In re Oxford Mgmt., Inc.*, 4 F.3d 1329, 1333 (5th Cir. 1993).

**Analysis**

Two bankruptcy appeals relating to the final settlement approved by the Bankruptcy Court are at issue in this case. In the primary case, Case 237, the Appellants challenge the Bankruptcy Court's approval of the settlement agreement. Appellants also appeal each of the orders issued by the Bankruptcy Court subsequent to and related to carrying out the settlement agreement, under civil action numbers 2:07cv346 and 2:07cv362. These two appeals were consolidated under civil action number 2:07cv362 ("Case 362"). In Case 362, as consolidated, the Appellants seek review of the Bankruptcy Court's orders approving the distribution of the settlement proceeds, denying their stay of the settlement agreement and dismissing the consolidated adversary proceedings. The Trustee has filed motions to dismiss Case 237 and Case 362 as moot.

Appellants challenge the settlement of their claims with St. Paul on several grounds. First, they claim the Trustee erroneously removed their state court actions against a non-debtor and settled their claims, without their participation, with only a portion of the insurance proceeds. They also assert that the Bankruptcy Court erred by finding that the insurance proceeds were property of the bankruptcy estate. Specifically, Appellant seeks to have its state law claims against Paiz and St. Paul's obligation to pay these claims excluded from the bankruptcy estate of the Debtor. Appellants seek remand to recover the balance of the Policy, or alternatively, to unwind the settlement so that

5

they can proceed independently against St. Paul. Appellants also challenge the fairness and reasonableness of the settlement approved by the Bankruptcy Court.

Appellants' suggestion that this Court should remand their state claims and allow them to proceed against the remaining insurance proceeds is wholly inequitable under the circumstances. To allow Appellants to proceed against the remaining insurance proceeds would unfairly prejudice St. Paul, which compromised the claims with the understanding that no further claims could be brought against the Policy. St. Paul paid $650,000 in consideration for a release of all claims and obligations under the Policy. Thus, the only feasible relief available to Appellants would require unwinding the whole settlement and having each creditor disgorge the settlement funds which have already been distributed. The critical inquiry, then, that this Court must consider is whether Appellants' appeal should be dismissed as moot because the settlement has been consummated.

The concept of "mootness" in bankruptcy is distinct from the constitutional mootness doctrine rooted in Article III, which dictates that only live cases or controversies can be decided by the courts. In the bankruptcy context, federal courts have established a mootness doctrine to "address the equitable concerns unique to bankruptcy proceedings." *Manges v. Seattle First Nat'l Bank (In re Manges)*, 29 F.3d 1034, 1038 (5th Cir. 1994). Thus, an appeal becomes moot and a reviewing court may decline to consider the merits of an appeal from a bankruptcy order when there has been substantial consummation of the plan such that effective judicial relief is no longer available–even though there may still be a viable dispute between the parties on appeal. *Id.* 1039. The court must strike the proper balance between the equitable considerations of finality and reliance on a judgment and the competing interests of a party's right to seek review of a bankruptcy order adversely affecting him. *Id.* (quoting *First Union Real Estate Equity & Mort. Inv. v. Club Assoc. (In re Club Assoc.)*, 956 F.2d 1065, 1069 (11th Cir. 1992)).

The court should examine three factors in determining if an appeal is moot: (1) whether a stay has been obtained; (2) whether the plan has been "substantially consummated"; and (3) whether the relief requested would affect the rights of third parties not before the court. *Id.* The standards of "substantial consummation" have largely been borrowed from the Chapter 11 statutory term used to measure when a bankruptcy court may no longer amend or modify a plan of reorganization.[12] *See* 11 U.S.C. § 1127(b). The Fifth Circuit found that this "yardstick . . . informs our judgment as to when finality concerns and the reliance interests of third parties upon the plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." *Manges*, 29 F.3d at 1041. Substantial consummation occurs when substantially all of the property has been transferred under the plan, the debtor has assumed control of substantially all the property, and distribution of property has commenced. 11 U.S.C. § 1101(2).

"Substantial consummation of a [ ] plan is a momentous event, but it does not necessarily make it impossible or inequitable for an appellate court to grant effective relief." *Manges*, 29 F.3d at 1042–43. The court must consider whether the remedy Appellants seek will alter the rights of third parties affected by consummation. Specifically, in this case, the Court must determine whether the settlement has been consummated to such an extent that undoing it, at this juncture, would jeopardize finality concerns and the reliance interests of third parties upon the settlement.

Although Appellants sought a stay, at the time of consummation, there was no stay in place. *See id.* at 1040 (noting "the failure or inability to obtain a stay pending appeal carries the risk that

---

[12] The substantial consummation analysis applies equally to plans of reorganization and compromises and settlements, in which the same concerns of undoing transfers that have already been made and affecting the rights of others not party to the appeal are present. *See Hilal v. Williams (In re Hilal)*, 226 Fed Appx. 381, n.1 (5th Cir. 2007); *Frisbie v. Bank of Am. Nat'l Trust & Savings Assoc. (In re Morningside Mobile Home RV Park)*, 32 Fed. Appx. 130 (5th Cir. 2002).

review might be precluded on mootness grounds"). As a consequence, the Court must consider the transactions that have transpired in the absence of a stay. The evidence before this Court demonstrates that the settlement has been substantially consummated. After securing approval from the Bankruptcy Court, the Trustee disbursed all the settlement proceeds to over 50 unsecured creditors, including Appellants, the I.R.S., the U.S. Department of Health and Human Services, the Texas Workforce Commission, and many others. Further, six consolidated adversary actions were dismissed with prejudice and all of the Defendants have been released from liability, including St. Paul. At this point, unwinding the settlement would be inequitable to the creditors who have received a distribution and would likely be a futile effort, as the result would be to transfer the Appellants' potential claims into Paiz's bankruptcy proceeding. Moreover, the Court would have to reinstate all of the claims that have been dismissed with prejudice. Thus, the Court finds that dismissal of Appellants' appeals is appropriate.

## Conclusion

For these reasons, it would be inequitable and futile to consider the merits of Appellants' appeals. All the relevant factors in the equitable mootness evaluation support the dismissal of Appellants' appeals in civil action numbers 2:07-237 and 2:07-346.

It is so ORDERED.

Signed this 6th day of March, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE